UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


YVETTE LAFAYETTE O/B/O
TERRANCE LAFAYETTE                      CIVIL ACTION

VERSUS                                  NUMBER 06-833-RET-SCR

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

**NOTICE**

    Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

    In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

    ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

    Baton Rouge, Louisiana, November 26, 2007.

*/s/ Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

YVETTE LAFAYETTE O/B/O
TERRANCE LAFAYETTE                          CIVIL ACTION

VERSUS                                      NUMBER 06-833-RET-SCR

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY

## MAGISTRATE JUDGE'S REPORT

Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his claim for children's supplemental security income (SSI) benefits.[1] Before the court is the plaintiff's petition for judicial review and appeal of the final administrative decision of the Commissioner.

## Background

An application was filed on behalf of the plaintiff for children's SSI benefits in November 2001, claiming that the plaintiff was disabled due to mental and behavior impairments. AR pp. 81-96. The application was denied and the plaintiff requested a hearing before an administrative law judge (ALJ). AR pp. 31-37. A hearing was held before the ALJ on May 22, 2003 and another

---

[1] The claim was filed on his behalf by his mother, Yvette Lafayette. In this report Terrance Lafayette is referred to as the plaintiff.

hearing was held on August 14, 2003.  AR pp. 227-66.  The ALJ issued a decision denying benefits on October 27, 2005.  AR pp. 17-28.

The ALJ found at the second step of the claim evaluation process that the plaintiff's impairments of attention deficit hyperactivity disorder (ADHD), borderline intellectual functioning, anxiety disorder and psychotic disorder, were severe.  However, the ALJ determined at the third and final step that these impairments did not meet any of the listed impairments found in 20 C.F.R. Ch. III, Pt. 404, Subpt. P, Appendix 1, Part B, nor did they medically or functionally equal any listed impairment.  AR pp. 19, 27.  On the issue of functional equivalency the ALJ concluded that the plaintiff had no limitations in the domains, or areas of functioning, of moving about and manipulating objects, caring for himself, and health and physical well-being.  The ALJ found less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others.  AR p. 27.  When the Appeals Council denied the plaintiff's request for review the decision of the ALJ became the final decision of the Commissioner.  AR pp. 4-6.

### **Standard of Review and Applicable Law**

The court's review of the Commissioner's final decision is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were

applied. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Harris*, *supra*. In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).[2]  Conflicts in the evidence are for the Commissioner, not the court, to resolve. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner's failure to apply the correct legal

---

[2] On judicial review under § 405(g), evidence external to the record is generally inadmissible, and the court cannot consider any evidence that is not already a part of the administrative record. *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985).

standards or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed are grounds for reversal. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

Effective August 22, 1996, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 changed the law for determining disability in childhood disability SSI cases.[3] Essentially, the changes eliminated the fourth step which required the Commissioner to complete an individualized functional assessment to determine whether a child's impairments were comparable in severity to those which would disable an adult.[4]

Under the applicable statute and regulations, an individual under the age of 18 is considered disabled if that individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I); *Harris*, 209 F.3d at 418.

---

[3] This is the law and regulations governing the plaintiff's claim for benefits. Plaintiff's date of birth is November 26, 1989. At the time of the ALJ's decision the plaintiff was almost 16 years old. AR p. 81.

[4] The elimination of the fourth step effectively returned the process for evaluating disability in children to that used prior to 1990 when the Supreme Court decided *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990). *Harris*, 209 F.3d at 417-18.

A three step sequential analysis is used to evaluate claims for children's SSI benefits.  These steps are: (1) Is the claimant engaged in substantial gainful activity?  (2) Does the claimant have a severe impairment or combination of impairments? (3) Does the claimant's impairment meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1?  20 C.F.R. § 416.924(a)-(d).

At the third step, if a claimant's impairments do not meet or medically equal any listing, a determination is made as to whether the impairments result in limitations that functionally equal a listing.  20 C.F.R. § 416.926a(a).  Functional equivalency requires consideration of how the claimant functions in terms of six domains, which are broad areas of functioning intended to capture all of what a child can or cannot do.  The six domains are: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself and health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).  A claimant's impairments functionally equal the listings if they are of listing-level severity.  Impairments are of listing-level severity if the claimant has marked limitations in two domains, or an extreme limitation in one domain.  20 C.F.R. § 416.926a(d).

Limitation in a domain is "marked" when impairments interfere seriously with the claimant's ability to independently initiate,

5

sustain, or complete activities. Daily functioning may be seriously limited when impairments limit only one activity or when the interactive and cumulative effects of impairments limit several activities. Marked limitation is more than moderate, but less than extreme. Extreme limitations in a domain occur when a claimant's impairments interfere very seriously with the ability to independently initiate, sustain or complete activities. An extreme limitation means more than marked, and is also the rating given to the worst limitations. However, it does not necessarily mean a total lack or loss of ability to function. 20 C.F.R. § 416.926a(e)(2)(I) and 3(I).

## Analysis

Plaintiff asserted that the ALJ failed to consider the record as a whole but instead used a small part of the record to justify a finding of not disabled. Plaintiff argued that the ALJ relied on a few notations from 2000 and 2001 reports that the plaintiff was improved or doing well, and completely ignored all the evidence during and after that time which reported that the plaintiff's school performance and behavior were getting worse. According to the plaintiff, the ALJ also ignored the uncontradicted testimony of the plaintiff's mother regarding the significant limitations in his functioning at school and home, and in his ability to get along with his family, peers and authority figures. Plaintiff cited Listing 112.11 and argued that the ALJ should have found that his

conditions satisfied this listing.[5]  With regard to functional equivalency, the plaintiff contended that ALJ's conclusions (the plaintiff was not limited in caring for himself, had less than marked limitations in acquiring and using information, attending and completing tasks, and interacting and relating with others) were not supported by substantial evidence.[6]

Review of the administrative record as a whole establishes that the plaintiff's arguments, for the most part, have merit.

At the third step of the SSI disability analysis for children, the inquiry is whether the claimant's impairments meet, medically equal, or functionally equal in severity a listed impairment.  If a claimant's impairments do not meet or medically equal a listing, the ALJ must determine whether the impairments result in limitations that functionally equal a listing based on the six relevant domains set forth in the regulations.  20 C.F.R. § 416.926a(b)(1)(I)-(vi).  The ALJ's finding that the plaintiff's combination of impairments was not functionally equal in severity to the listings, was not supported by substantial evidence.

In late 1998 the plaintiff was first referred for evaluation and treatment of ADH.  At that time a psychological screening

---

[5] Listing 112.11 covers attention deficit hyperactivity disorder.  20 C.F.R. Pt. 404, Subpart P, Appendix 1, Part B.

[6] Plaintiff did not contest the ALJ's findings at steps one and two, nor the ALJ's finding that he was not limited in moving about and manipulating objects, or health and physical well-being.

7

reported inattention/ hyperactivity symptoms, conduct problems and learning difficulties. AR p. 186. From that time on the plaintiff was continuously treated and evaluated for ADHD and other psychological problems. Despite treatment and medication the plaintiff's impairments remained and intensified during the years that followed.

The only evidence cited by the ALJ in support of his findings consisted of selected portions of progress reports during 2000 and 2001 from the Earl K. Long ADHA/Behavioral Clinic. The parts relied upon were conclusory statements that, for brief periods of time, the plaintiff was improved or doing well at home or school. The ALJ also relied on the report of a state agency medical consultant and gave "significant weight" to the evaluation of clinical psychologist Dr. Alan L. Taylor. AR p. 26. However, the reports of the state agency consultant and Taylor were completed in May 2002. AR pp. 135-45. Neither of these evaluations could have taken into account any of the information relevant to the plaintiff's impairments after May 2002.

Nevertheless, even in May 2002 Taylor diagnosed the plaintiff with four separate conditions - anxiety disorder, psychotic disorder, ADHD and borderline intellectual functioning. The uncontradicted evidence in the record clearly supported his findings. Plaintiff's intellectual functioning in the borderline

8

range is documented by the WISC-III scores reported by Taylor.[7] The record is replete with evidence of the plaintiff's academic and learning difficulties during his entire time in school.  Plaintiff was tested in December 1999 at the age of ten scored below his age level on each of the sub-tests.  AR pp. 207-23.  Plaintiff received special education instruction and services.  AR pp. 126, 128, 194, 196-02, 207, 231.  The school records also reflected that the plaintiff was socially promoted to the fourth grade, and had to go to summer school after fourth grade because he failed the LEAP test.  AR pp. 159, 164.  Although the ALJ stated that the plaintiff had failed twice, the evidence before the ALJ established that the plaintiff had actually failed three times - first, second and sixth grade.  AR pp. 208, 225, 245-46, 261-62.

Similarly, the record is filled with evidence of the plaintiff's persistent discipline and behavior problems at school and home.  It is true that the record contained a few notations of periodic improvement.  However, beginning in 2002 through the time of the hearing there is no evidence that the plaintiff had been noncompliant with his medication or treatment, and the uncontradicted evidence shows that the plaintiff's learning and behavior problems were unabated.[8]  School and other records

---

[7] Plaintiff scored a verbal IQ of 73, a performance IQ of 75 and a full scale IQ of 72.  AR p. 143.

[8] The records from 2000 and 2001 contained a few statements
(continued...)

9

documented that the plaintiff had over 20 disciplinary incidents from August 2002 to February 2003, and was recommended for expulsion from the middle school he was attending. AR pp. 118-32. Plaintiff was expelled and assigned to an alternative, second chance school for the remainder of the school year. Plaintiff's mother testified that he continued to have disciplinary problems which resulted in suspensions at the second chance school, and as a result he was sent to a discipline center. AR pp. 238-40, 252-53. Her testimony, which is supported by the medical records, also showed that the plaintiff was prescribed additional medication because of his continued attention/behavior problems in school and other symptoms. These symptoms included the inability to sleep by himself or be left alone, hearing voices, keeping up with his belongings, fighting and difficulty getting along with peers/siblings, and compulsive behaviors.[9]

The ALJ failed to cite, discuss or otherwise indicate that he considered any of this uncontradicted evidence in his decision.

---

[8](...continued)
that the plaintiff reported that he had not taken his medication that day, but the remainder of the record did not contain any indications that the plaintiff was not compliant with his treatment/medication. Plaintiff's mother testified at the hearing that she administers the medicine and checks to make sure the plaintiff has actually taken it. AR pp. 191-92, 240.

[9] AR pp. 232-50. To treat his ADHD the plaintiff was initially prescribed Ritalin and then Concerta. Later the plaintiff was prescribed Adderall for ADHD and placed on Lexapro for his other symptoms. AR pp. 165-78, 182, 115, 117, 121, 133, 148, 224-26, 239-41, 246-48.

Considering the administrative record as a whole, a handful of progress notes and consultative reports which did not consider all the information relevant to the plaintiff's impairments are not sufficient for a reasonable mind to accept as adequate to support the conclusion that the plaintiff has less than marked limitation in the domains of attending and completing tasks, acquiring and using information, and interacting and relating with others.  A remand is necessary so that the Commissioner can properly consider the plaintiff's claim in light of the entire record, and obtain evaluations that take into account all of the information relevant to the plaintiff's impairments.

## **Recommendation**

It is the recommendation of the magistrate judge that, under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security denying the claim of Yvette Lafayette for supplemental security income (SSI) benefits for her son Terrance Lafayette be reversed, and the claim be remanded to the Commissioner for reevaluation.

Baton Rouge, Louisiana, November 26, 2007.

*[signature: Stephen C. Riedlinger]*

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE